UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ROYAL PRIMO CORPORATION, et al.,

    Plaintiffs,

v.

WHITEWATER WEST INDUSTRIES, LTD,

    Defendant.

Case No. 15-cv-04391-JCS

**ORDER GRANTING MOTION TO DISMISS**

Re: Dkt. No. 16

## I. INTRODUCTION

Plaintiffs Royal Primo Corporation ("Royal Primo") and Don Lee bring this action seeking that the Court declare that Plaintiffs are parties to a contract with Defendant Whitewater West Industries, Ltd. ("Whitewater") and entitled to a commission of 17% of Whitewater's receipts from a water park project in Korea. Whitewater moves to dismiss Plaintiffs' Complaint for failure to state a claim and failure to join a necessary party. The Court finds the matter suitable for resolution without oral argument and **vacates the hearing set for February 12, 2016**. *See* Civ. L.R. 7-1(b). For the reasons stated below, Whitewater's Motion is GRANTED, and Plaintiffs' Complaint is DISMISSED with leave to amend. Plaintiffs may file an amended complaint no later than March 4, 2016.[1]

## II. BACKGROUND

### A. Facts Alleged

Lee is the president and owner of Royal Primo, and both Lee and Royal Primo "are engaged in the development and planning of amusement parks in South Korea, including water parks, and the sourcing of equipment, materials, supplies and service vendors associated with such

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

1    parks." Compl. ¶ 2. "Lee assists companies, in particular foreign businesses, in navigating the

2    complexities of contracting in South Korea, including government relations, contract negotiations,

3    bidding, and outsourcing." *Id.* ¶ 8. Whitewater, a Canadian corporation, is also engaged in water

4    park development, but is not focused specifically on South Korea. *See id.* ¶ 3.

5         CDM Group, Inc. ("CDM"), which is not presently a party to the case, is an amusement

6    ride design company based in Valencia, California, and apparently had a working relationship

7    with Lee. *Id.* ¶ 9. After "confirm[ing] Whitewater's credentials" through CDM, Lee approached

8    Whitewater in 2005 to discuss an opportunity related to a water park in Kangwon Province, South

9    Korea. *Id.* Lee had a strong relationship with the developer of the project and relevant

10   government officials. *Id.*

11        Lee promoted Whitewater to those contacts "[f]rom 2005 going forward." *Id.* ¶ 10. The

12   Complaint includes the following allegations regarding a contract entered or confirmed in 2009:

> In March 2009, Whitewater both verbally and in writing confirmed its contractual relationship with CDM and Lee and as further inducement for Lee to continue his efforts promoting the company into the Kangwon Land project, agreed to pay 17% commission on any future contract reached by Whitewater. Whitewater's President and CEO, Geoff Chutter, confirmed this agreement multiple times to both Lee and CDM. Chutter confirmed the terms again in writing on March 12, 2009. See <u>Exhibit A</u> attached hereto.

*Id.* ¶ 10. The only attachment to the Complaint is a March 12, 2009 letter on Whitewater letterhead from Chutter to CDM that reads as follows:

> Attention John March
>
> Re Kangwon WaterPark
>
> Dear Sir,
>
> This letter served to confirm that Whitewater West Industries Ltd wishes to engage the services of CDM Group Inc. to act as Whitewater's agent in order to secure the design services and product contract for the above mentioned project. To date all of the promotional and sales work for this project has been completed by CDM in association with Mr. Don Lee of Korea and in order to compensate for you [sic] efforts and expenses Whitewater agrees to pay a referral fee/commission in the amount of 17% of any future contracted amount with WhiteWater [sic]. Such fees shall be paid proportionately as payments are received from either CDM or the waterpark owner directly. These fees shall be paid directly to CDM or to another as directed by CDM.

2

> Should you have any comments or questions on the above please feel free to contact the writer.
>
> Best Regards,
> [Signature]
> Geoff Chutter, C.A.
> President & C.E.O.
> WHITEWATER WEST INDUSTRIES LTD.

*Id.* Ex. A.[2]

In reliance on Whitewater's representations, Lee continued to promote Whitewater as a supplier for the Kangwon project. *Id.* ¶ 11. The developer accepted a proposal from non-party Dongbu Construction in 2011, and Dongbu Construction selected Whitewater as a supplier of parts and services. *Id.* ¶ 12. Lee believes that Whitewater has received more than $40 million for its work on the project. *Id.* ¶ 13. Whitewater has refused Lee's demands that it confirm the terms of a contract between Whitewater and Plaintiffs and that Whitewater provide an accounting of its payments for the Kangwon project. *Id.* ¶ 14.

### B.   Parties' Arguments

Plaintiffs bring a claim for declaratory judgment, asking that the Court "declare the rights and obligations of Lee, Royal Primo, and Whitewater created under the agreement(s)," "declare the agreement(s) as binding and enforceable contract(s) between Lee, Royal Primo, and Whitewater," and "order and direct Whitewater to account to Lee and Royal Primo for amounts received and to pay Lee and Royal Primo 17% of those amounts as called for under the agreement(s)." *Id.* ¶¶ A−B.

Whitewater argues that the case must be dismissed because the letter attached to the Complaint evinces only a contract between Whitewater and CDM, and Plaintiffs cannot bring a declaratory relief action related to a contract that they are not parties to. *See generally* Mot. (dkt. 16). Whitewater also argues that even if Plaintiffs have any rights under the alleged contract, CDM is a necessary party. *Id.* at 4.

Plaintiffs respond that the allegations of the Complaint adequately establish "that a

---

[2] Although this letter is not explicitly labeled as Exhibit A, it is the only attachment to the Complaint and generally matches the description of "Exhibit A" as cited in Paragraph 10. This Order therefore cites the letter as Exhibit A.

3

1 contract exists between Lee and Whitewater for commission to be paid." Opp'n (dkt. 17) at 2−3.
2 According to Plaintiffs, the letter attached to the Complaint "memorializes certain of the
3 contractual elements" but is not the entire contract. *Id.* at 4. Plaintiffs also rely on evidence
4 outside the Complaint, specifically a declaration by Lee and an attached email from 2008. *Id.* at 4
5 (citing Lee Decl. (dkt. 19)).

6 In its Reply, Whitewater argues that Plaintiffs' allegations regarding the formation of a
7 contract are too conclusory to satisfy the pleading standard of *Iqbal* and *Twombly*. Reply (dkt. 21)
8 at 1–2. Whitewater also argues that evidence extraneous to the Complaint—Lee's declaration and
9 the attached email—should be disregarded on a motion to dismiss for failure to state a claim, *id.* at
10 2–3, and notes that Plaintiffs failed to respond to Whitewater's assertion that CDM is a necessary
11 party, *id.* at 3.

## III. ANALYSIS

### A. Legal Standard

A complaint may be dismissed for failure to state a claim on which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a plaintiff's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that "[a] pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12(b)(6), the court analyzes the complaint and takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101,

1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Rather, the claim must be "'plausible on its face,'" meaning that the plaintiff must plead sufficient factual allegations to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

**B.  Lee's Declaration Is Improper**

Plaintiffs' Opposition relies in part on a declaration by Lee and an email attached to that declaration. Opp'n at 4–5; *see generally* Lee Decl.  A motion under Rule 12(b)(6) focuses on the allegations of the complaint, *N. Star Int'l*, 720 F.2d at 581, and "extraneous evidence should not be considered in ruling on a motion to dismiss" for failure to state a claim.  *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001) (citing *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994)).  Plaintiffs have not identified any authority that would allow the Court to consider their extraneous evidence, whether under a doctrine of judicial notice or otherwise.  The Court therefore disregards Lee's declaration and its attachment.

**C.  Plaintiffs Have Not Plausibly Alleged That They Are Parties to a Contract**

It is not clear what state's law governs the alleged contract in this case.  Because the Complaint alleges that "the contract at issue was created and consummated in this Court's jurisdiction," the Court assumes for the purpose of this Order that California law applies.  *See* Compl. ¶ 5.

Generally, under California law, "'[s]omeone who is not a party to [a] contract has no standing to enforce the contract." *Gantman v. United Pac. Ins. Co.*, 232 Cal. App. 3d 1560, 1566 (1991) (quoting *Hatchwell v. Blue Shield of Cal.* 198 Cal.App.3d 1027, 1034 (1988)) (alterations in original); *see also Schulz v. Cisco Webex, LLC*, No. 13-CV-04987-BLF, 2014 WL 2115168, at *3–5 (N.D. Cal. May 20, 2014) (granting a motion to dismiss where the plaintiff had not adequately alleged that she was either a party to the contract or an intended third party beneficiary).  Plaintiffs do not dispute this basic principle of contract law and do not argue that

they are intended third party beneficiaries.  *See generally* Opp'n.  The Court therefore examines whether Plaintiffs have adequately alleged that they are parties to a contract with Whitewater.

There is no clear allegation, conclusory or otherwise, that Royal Primo was a party to any contract.  *See generally* Compl.  The Complaint ambiguously defines the word "Lee," in one instance defining it to mean both Don Lee and Royal Primo collectively, and in another instance defining it to mean only Don Lee.  *See id.* at 1 (unnumbered introduction and ¶ 1).  The remainder of the Complaint discusses "Lee" without specifying any involvement of Royal Primo.  Because, as discussed below, the Complaint does not adequately allege that even Lee himself entered a contract with Whitewater, the Court need not address whether allegations regarding "Lee" also encompass Royal Primo.  If Plaintiffs file an amended complaint, it should resolve that ambiguity.

The Complaint asserts that "Whitewater and Lee entered into a contract," that "Whitewater both verbally and in writing confirmed its contractual relationship with CDM and Lee," and that Whitewater "agreed to pay a 17% commission on any future contracts."  *Id.* ¶¶ 7, 10.  While the Complaint includes some details regarding the terms of the purported contract—that Lee would "continue his efforts promoting [Whitewater]" and Whitewater would pay a 17% commission, *id.* ¶ 10—it includes almost no factual allegations regarding how the parties allegedly entered the contract.  It is not clear whether Plaintiffs allege a written or oral contract, or even whether the alleged contract was express or implied.  *See* Opp'n at 2–3, 5 (suggesting that the contract might be implied).  Plaintiffs allege that Whitewater and its president Chutter "confirmed" the purported agreement in 2009, but it is not clear when Plaintiffs believe the contract was actually entered.  *See* Compl. ¶ 10.  "A pleading that offers 'labels and conclusions' . . . will not do,'" and Plaintiffs have provided no more than their conclusion on the issue of whether the parties entered a contract.  *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  The factual allegations of the Complaint, without more, do not plausibly support that conclusion.

Plaintiffs' conclusion that Lee entered a contract with Whitewater is particularly implausible in light of the letter from Chutter attached to the Complaint.  The Complaint alleges, and the Court takes as true, that Chutter's letter "confirmed the terms" of the alleged contract.  *See* Compl. ¶ 10.  In the letter, Chutter engaged *CDM*, and confirmed that "fees shall be paid *directly*

*to CDM* or to another as directed by CDM." *Id.* Ex. A (emphasis added). If, as the Complaint suggests, the letter accurately characterized the alleged contract, then it does not appear that Lee was a party, and the contract does not appear to call for any payment to Lee, much less that Lee would be entitled to the full 17% commission that the letter states will be paid to CDM.

Plaintiffs argue in their Opposition that the letter does not "constitute Whitewater's contract with Lee" but instead merely memorialized "certain of the contractual elements." Opp'n at 4. The two such "elements" noted in the Opposition are that "'all of the promotion and sales work for this project as been [sic, "has been" in the original] completed by CDM in association with Mr. Don Lee'" and that Whitewater agreed to pay a commission of 17% "in order to compensate for Lee Lee's [sic] efforts and expenses." *Id.* (quoting Compl. Ex. A). Plaintiffs do not accurately characterize either the Complaint or the letter. The Complaint alleges that Chutter's letter "confirmed the terms," not merely some of the terms. Compl. ¶ 10. And the letter says nothing about the commission being intended as compensation for *Lee's* efforts and expenses, but instead, in clear language that Plaintiffs' Opposition fails to address, states that the "fees shall be paid directly to CDM or to another as directed by CDM." *Id.* Ex. A. There is no allegation that CDM directed that fees be paid to Lee. Accordingly, the Complaint does not plausibly allege that Whitewater entered a contract with Plaintiffs or agreed to pay Plaintiffs any fees.

Plaintiffs could, perhaps, allege additional facts that would plausibly support an entitlement to relief. The Court accordingly grants Plaintiffs leave to amend.

### D. CDM Is Likely a Necessary Party

Failure to join a necessary party can be grounds for dismissal of an action. *See* Fed. R. Civ. P. 12(b)(7); Fed. R. Civ. P. 19. Plaintiffs do no respond to Whitewater's argument that CDM is a necessary party to this case. *See* Mot. at 4; Reply at 3.; *see generally* Opp'n.

"[A] party to a contract is necessary, and if not susceptible to joinder, indispensable to litigation seeking to decimate that contract." *Dawavendewa v. Salt River Project Agricultural Improvement & Power Dist.*, 276 F.3d 1150, 1158 (9th Cir. 2002). While Plaintiffs here do not seek to "decimate" a contract, they nevertheless ask the Court to interpret a purported contract and to declare the parties' rights under the contract, including that Plaintiffs are entitled to 17% of

7

Whitewater's receipts from the Kangwon project. Compl. ¶¶ A, B.

The precise terms of any contract involving Plaintiffs and Whitewater are not clear from this Complaint. It appears highly likely, however, that whatever the arrangements were, CDM was also involved. *See* Compl. ¶ 10 ("Whitewater . . . confirmed its contractual relationship with CDM and Lee); *id.* Ex. A (indicating that CDM worked "in association with" Lee and directing that fees be paid to CDM). It is also likely that a declaration of Plaintiffs' and Whitewater's rights could either "impair impede [CDM's] ability to protect [its] interest" under the purported contract or "leave [Whitewater] subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." Fed. R. Civ. P. 19(1)(B)(i), (ii). If that is so, Plaintiffs must either join CDM as party in their amended complaint or address why the Court should allow the case to proceed without CDM.

The Court does not decide on the present Motion whether CDM is a necessary party, because that issue will depend on the contract pleaded in the amended complaint. If Plaintiffs do not add CDM as a party, Whitewater may raise this issue again on a motion to dismiss the amended complaint.

## IV.   CONCLUSION

For the reasons stated above, Whitewater's Motion is GRANTED and Plaintiffs' Complaint is DISMISSED with leave to amend. If Plaintiffs choose to file an amended complaint, they must do so no later March 4, 2016, and must address the deficiencies discussed above. Failure to do so may result in dismissal with prejudice.

**IT IS SO ORDERED.**

Dated: February 8, 2016

_____
JOSEPH C. SPERO
Chief Magistrate Judge