UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROYAL PRIMO CORPORATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> WHITEWATER WEST INDUSTRIES, LTD, <br><br> Defendant. | Case No. 15-cv-04391-JCS <br><br> **ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT** <br><br> Re: Dkt. No. 32 |

## I. INTRODUCTION

Plaintiffs Royal Primo Corporation ("Royal Primo") and Don Lee bring this action alleging that Defendant Whitewater West Industries, Ltd. ("Whitewater") agreed to pay Plaintiffs a 17% commission for work undertaken to secure Whitewater a contract for construction of water park in South Korea, but failed to pay after Plaintiffs completed their work and Whitewater secured the contract. The Court previously dismissed Plaintiffs' original Complaint for failure to plausibly state a claim on which relief could be granted. Order Granting Mot. to Dismiss ("Order," dkt. 26).[1] Plaintiffs have now filed a First Amended Complaint ("FAC," dkt. 28), and Whitewater again moves to dismiss. The Court held a hearing on April 29, 2016. For the reasons stated below, Whitewater's Motion is GRANTED, and Plaintiffs' First Amended Complaint is DISMISSED with leave to further amend. Plaintiffs may file a second amended complaint no later than May 20, 2016.[2]

---

[1] *Royal Primo Corp. v. Whitewater W. Indus., Ltd.*, No. 15-CV-04391-JCS, 2016 WL 467467 (N.D. Cal. Feb. 8, 2016). Citations herein to page numbers in the previous Order refer to the version filed in the Court's ECF docket.

[2] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

## II. BACKGROUND

### A. Original Complaint and Dismissal Order

Plaintiffs' original Complaint alleged that Lee (and possibly also Royal Primo)[3] worked with non-party CDM Group, Inc. ("CDM") to approach Whitewater in 2005 regarding an opportunity for water park design services in South Korea. *See* Compl. (dkt. 1) ¶ 9. "In March 2009, Whitewater both verbally and in writing confirmed its contractual relationship with CDM and Lee and as further inducement for Lee to continue his efforts promoting the company . . . agreed to pay a 17% commission on any future contract reached by Whitewater." *Id.* ¶ 10. Whitewater's president and CEO "confirmed" the terms of that agreement on multiple occasions, including in a letter dated March 12, 2009. *Id.* That letter, which was attached to the Complaint, stated that Whitewater would pay a 17% commission for promotional work "completed by CDM in association with Mr. Don Lee of Korea," and that it would pay that commission "directly to CDM or to another as directed by CDM." *Id.* Ex. A. The original Complaint sought only declaratory relief. *Id.* ¶¶ 15−17.

Whitewater moved to dismiss on the grounds that: (1) Plaintiffs failed to adequately allege that they had any rights under a contract that, by its terms, called for payment to non-party CDM; and (2) CDM was a necessary party to the action. *See* Mot. to Dismiss Compl. (dkt. 16). The Court agreed that the Complaint did not plausibly allege any entitlement to relief where Plaintiffs specifically alleged that the attached letter confirmed the terms of the agreement, and the letter called for payment to CDM. Order at 5−7. The Court did not reach the question of whether CDM was a necessary party, but noted that it "likely" was, and instructed Plaintiffs to either add CDM as a party or explain why CDM was not necessary to the case. *Id.* at 7−8. The Court granted Plaintiffs leave to amend. *Id.* at 8.

---

[3] The original Complaint ambiguously defined the term "Lee" in one instance to refer to both Plaintiffs collectively, and in another instance to refer only to Don Lee. *See* Compl. at 1. The Court identified that ambiguity in its previous Order and instructed Plaintiffs to resolve it in their First Amended Complaint. Order at 6. The First Amended Complaint nevertheless repeats the conflicting definitions of the term. *See* FAC at 1. Any further pleading that repeats this error will be stricken.

2

### B. First Amended Complaint

Plaintiffs' First Amended Complaint omits all reference to CDM and to any written confirmation of the parties' alleged agreement. Instead, it alleges that Lee approached Whitewater's president Geoff Chutter in 2005 about an opportunity that Lee and Royal Primo had developed in South Korea, FAC ¶ 9—omitting a previous reference to Lee "confirm[ing] Whitewater's credentials through his contact with CDM," Compl. ¶ 9. The First Amended Complaint alleges that Chutter orally agreed to pay Lee and Royal Primo a 17% commission for any contract that Whitewater obtained for work on the project in Korea. *Id.* There is no reference to Chutter confirming the agreement's terms in writing, nor any suggestion that CDM was involved in the promotional work or would receive the commission. *See generally id.* As in the original Complaint, Plaintiffs go on to allege that Lee and Royal Primo expended significant effort on Whitewater's behalf, Whitewater obtained a lucrative contract as a result, and Whitewater has refused to pay Plaintiffs the agreed commission. *See id.* ¶¶ 10−13. The First Amended Complaint includes claims for breach of contract, quasi-contract, fraud, and an accounting. *Id.* ¶¶ 14−37. Unlike the original Complaint, the First Amended Complaint seeks money damages. *Id.* ¶¶ A−C (prayer for relief).

## III. ANALYSIS

### A. Legal Standard

A complaint may be dismissed for failure to state a claim on which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a plaintiff's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that "[a] pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12(b)(6), the court analyzes the complaint and takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Rather, the claim must be "'plausible on its face,'" meaning that the plaintiff must plead sufficient factual allegations to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

Rule 9(b) of the Federal Rules of Civil Procedure sets a heightened pleading standard for claims based on fraud. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Ninth Circuit has held that in order to meet this standard, a "complaint must specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993); *see also McMaster v. United States*, 731 F.3d 881, 897 (9th Cir. 2013). The heightened standard does not apply to "[m]alice, intent, knowledge, and other conditions of a person's mind." Fed. R. Civ. P. 9(b).[4]

**B.     Plaintiffs' Allegations Remain Implausible for Failure to Explain CDM's Role**

Whitewater's present Motion turns primarily on whether the First Amended Complaint, which does not discuss CDM and alleges an oral contract between Whitewater and Plaintiffs, contradicts the original Complaint, which alleged a business relationship that involved CDM to at least some extent and a contract "confirmed" by an email from Whitewater to CDM—and if so,

---

[4] Whitewater does not invoke the heightened pleading standard of Rule 9(b) as an argument for dismissal, but Plaintiffs should keep this standard in mind if they wish to include a claim for fraud in any further pleadings.

whether that renders the current allegations implausible.

The principle that a court may look to prior pleadings in determining the plausibility of an amended complaint is well established. *See, e.g.*, *Rodriguez v. Sony Comput. Entm't Am., LLC*, 801 F.3d 1045, 1054 (9th Cir. 2015) ("Rodriguez's subsequent attempt to thwart the statutory language by artfully pleading . . . is unconvincing, especially considering that the more recent pleading completely contradicts the earlier pleading."). Generally, an amended complaint should contain "additional allegations that are 'consistent with the challenged pleading' and that do not contradict the allegations in the original complaint." *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) (quoting *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296−97 (9th Cir. 1990)). Ninth Circuit precedent is inconsistent as to whether amended pleadings may ever contradict earlier allegations. *Compare Airs Aromatics, LLC v. Opinion Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014) ("A party cannot amend pleadings to directly contradict an earlier assertion made in the same proceeding." (citation, brackets, and internal quotation marks omitted)) (holding that leave to amend would be futile), *with PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 860 (9th Cir. 2007) ("The short of it is that there is nothing in the Federal Rules of Civil Procedure to prevent a party from filing successive pleadings that make inconsistent or even contradictory allegations.") (holding that a district court erred in striking inconsistent pleadings as sham litigation). At the very least, however, "when evaluating an amended complaint, '[t]he court may also consider the prior allegations as part of its "context-specific" inquiry based on its judicial experience and common sense to assess whether' an amended complaint 'plausibly suggests an entitlement to relief.'" *McKenna v. WhisperText*, No. 5:14-CV-00424-PSG, 2015 WL 5264750, at *3 (N.D. Cal. Sept. 9, 2015) (quoting *Cole v. Sunnyvale*, No. C-08-05017-RMW, 2010 WL 532428, at *4 (N.D. Cal. Feb. 9, 2010)) (alteration in original).

While the allegations of the First Amended Complaint in this case may not overtly contradict the original Complaint, there is at least significant tension between the two. In the original Complaint, Plaintiffs alleged that Whitewater "confirmed the terms" of its agreement with Plaintiffs in a letter stating that Whitewater would pay a 17% commission to *CDM* for work

5

"completed by CDM in association with Mr. Don Lee." Compl. ¶ 10 & Ex. A. The First Amended Complaint's relatively conclusory allegation that Whitewater orally agreed to pay Plaintiffs a 17% commission for the same work is not plausible without some explanation of how the alleged oral contract relates to the previously-alleged agreement with CDM. There are any number of conceivable theories of recovery consistent with both the oral contract alleged in the First Amended Complaint and the letter attached to the original Complaint.[5] Without setting forth allegations explaining such a theory, however, the First Amended Complaint neither "'give[s] [Whitewater] fair notice of what the . . . claim is and the grounds upon which it rests,'" nor provides a sufficient factual basis "to raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (ellipsis in original). Plaintiffs have made some effort to provide such an explanation in their present Opposition, at the hearing, and in a declaration submitted in opposition to the first motion to dismiss, but such materials and arguments cannot substitute for allegations missing from their complaints.

The deficiency is perhaps even more significant in this case because—as discussed in the Court's previous Order—there is reason to believe that CDM may be an indispensible party. *See* Order at 7−8. If Plaintiffs' theory of the case would require joining CDM as a party, that issue should be resolved at the outset, particularly where CDM's joinder might in turn raise issues of this Court's jurisdiction. *See* Compl. ¶ 9 (alleging that CDM "work[ed] out of Valencia, California"); FAC ¶¶ 1−2 (alleging that Plaintiffs are domiciled in California); *id.* ¶ 4 (asserting diversity jurisdiction under 28 U.S.C. § 1332).[6]

Further factual detail is needed for all four of Plaintiffs' claims. This Order therefore does

---

[5] In light of the sort of considerations identified in *PAE*—parties' understandable uncertainty as to relevant facts and law, time pressure for filing complaints, and the accepted practices of filing unverified complaints and pleading in the alternative, *see PAE*, 514 F.3d at 858−59—the Court will not hold Plaintiffs to a strict reading of their previous allegation that the letter to CDM "confirmed the terms" of their agreement with Whitewater. But having attached it to the previous Complaint, Plaintiffs cannot now simply pretend that the letter does not exist.
[6] Plaintiffs' counsel suggested at the hearing that CDM may be defunct. If Plaintiffs believe that CDM no longer exists, and that its nonexistence may bear on the question of whether it is a necessary party, they may include allegations to that effect in a second amended complaint.

not reach the parties' arguments regarding the quasi-contract claim, including whether it is precluded by Plaintiffs' contract theory and whether (as first raised in Whitewater's Reply) the statute of limitations has expired. *See* Mot. (dkt. 32) at 6; Opp'n (dkt. 35) at 8−9; Reply (dkt. 36) at 5−6. Similarly, the Court declines to reach Whitewater's argument (unanswered in Plaintiffs' Opposition and abandoned in Whitewater's Reply) that Plaintiffs cannot seek an accounting because their claim is for an amount subject to straightforward calculation. *See* Mot. at 6−7. More detailed allegations in a second amended complaint may bring those issues into clearer focus.

## IV. CONCLUSION

For the reasons stated above, Whitwater's Motion is GRANTED, and Plaintiffs' First Amended Claim is DISMISSED with leave to further amend. Plaintiffs may file a second amended complaint no later than May 20, 2016. Plaintiffs are advised that failure to include sufficient allegations on their third attempt may lead the Court to conclude that further amendment would be futile.

**IT IS SO ORDERED.**

Dated: April 29, 2016

JOSEPH C. SPERO
Chief Magistrate Judge