1

2

3

4

5

6

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ROYAL PRIMO CORPORATION, et al.,<br><br>                      Plaintiffs,<br><br>          v.<br><br>WHITEWATER WEST INDUSTRIES, LTD,<br><br>                      Defendant. | Case No.  15-cv-04391-JCS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. No. 43 |

## I.     INTRODUCTION

Plaintiffs Royal Primo Corporation ("Royal Primo") and Don Lee bring this action alleging that Defendant Whitewater West Industries, Ltd. ("Whitewater") agreed to pay Plaintiffs a 17% commission on contracts secured by Whitewater as a result of Plaintiffs' efforts to promote Whitewater to managers and representatives of a water park project in South Korea, but failed to pay after Plaintiffs completed their work and Whitewater secured the contract.  The Court previously dismissed Plaintiffs' original Complaint and First Amended Complaint for failure to state a claim on which relief could be granted.  Order Granting Mot. to Dismiss ("Order I," dkt. 26)[1]; Order Granting Mot. to Dismiss 1st Am. Compl. ("Order II," dkt. 38).[2]  Plaintiffs have now filed a Second Amended Complaint ("SAC," dkt. 39) and Whitewater again moves to dismiss.  The Court held a hearing on July 29, 2016.  For the reasons stated below, Whitewater's Motion is GRANTED in part and DENIED in part.[3]

---

[1] *Royal Primo Corp. v. Whitewater W. Indus., Ltd.*, No. 15-CV-04391-JCS, 2016 WL 467467 (N.D. Cal. Feb. 8, 2016).  Citations herein to page numbers in that order refer to the version filed in the Court's ECF docket.

[2] *Royal Primo Corp. v. Whitewater W. Indus., Ltd.*, No. 15-CV-04391-JCS, 2016 WL 1718196 (N.D. Cal. Apr. 29, 2016).  Citations herein to page numbers in that order refer to the version filed in the Court's ECF docket.

[3] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

United States District Court<br>Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

## II.     PROCEDURAL BACKGROUND

### A.     Original Complaint and Dismissal Order

Plaintiffs' original Complaint alleged that Lee worked with non-party CDM Group, Inc. ("CDM") to approach Whitewater in 2005 regarding an opportunity for water park design services in South Korea. *See* Compl. (dkt. 1) ¶ 9. "In March 2009, Whitewater both verbally and in writing confirmed its contractual relationship with CDM and Lee and as further inducement for Lee to continue his efforts promoting the company . . . agreed to pay a 17% commission on any future contract reached by Whitewater." *Id.* ¶ 10. Geoff Chutter, Whitewater's president and CEO, "confirmed" the terms of that agreement on multiple occasions, including in a letter dated March 12, 2009 (the "Chutter Letter"). *Id.* The Chutter Letter, which was attached to the Complaint, stated that Whitewater would pay a 17% commission for promotional work "completed by CDM in association with Mr. Don Lee of Korea," and that it would pay that commission "directly to CDM or to another as directed by CDM." *Id.* Ex. A. The original Complaint sought only declaratory relief. *Id.* ¶¶ 15−17.

Whitewater moved to dismiss on the grounds that: (1) Plaintiffs failed to allege adequately that they had any rights under a contract that, by its terms, called for payment to non-party CDM; and (2) CDM was a necessary party to the action. *See* Mot. to Dismiss Compl. (dkt. 16). The Court agreed that the Complaint did not plausibly allege any entitlement to relief where Plaintiffs specifically alleged that the Chutter Letter confirmed the terms of the agreement, and the letter called for payment to CDM. Order I at 5−7. The Court did not reach the question of whether CDM was a necessary party, but noted that it "likely" was, and instructed Plaintiffs to either add CDM as a party or explain why CDM was not necessary to the case. *Id.* at 7−8. The Court granted Plaintiffs leave to amend. *Id.* at 8.

### B.     First Amended Complaint and Dismissal Order

Plaintiffs' First Amended Complaint omitted all reference to CDM and to any written confirmation of the parties' alleged agreement. *See generally* 1st Am. Compl. ("FAC," dkt. 28). Instead, it alleged that Lee approached Chutter in 2005 about an opportunity that Lee and Royal Primo had developed in South Korea, *id.* ¶ 9—omitting a previous reference to Lee "confirm[ing]

Whitewater's credentials through his contact with CDM," Compl. ¶ 9.  The FAC alleged that Chutter orally agreed to pay Lee and Royal Primo a 17% commission for any contract that Whitewater obtained for work on the project in Korea.  FAC ¶ 9.  It contained no reference to Chutter confirming the agreement's terms in writing, nor any suggestion that CDM was involved in the promotional work or would receive the commission.  *See generally id.*  As in the original Complaint, Plaintiffs further alleged that Lee and Royal Primo expended significant effort on Whitewater's behalf, Whitewater obtained a lucrative contract as a result, and Whitewater has refused to pay Royal Primo the agreed commission.  *See id.* ¶¶ 10−13.  The FAC included claims for breach of contract, quasi-contract, fraud, and an accounting.  *Id.* ¶¶ 14−37.  Unlike the original Complaint, the First Amended Complaint sought money damages.  *Id.* ¶¶ A−C (prayer for relief).

Whitewater again moved to dismiss on the grounds that, *inter alia*, Plaintiffs' new allegations in their FAC conflicted with the original Complaint and the Chutter Letter, and Plaintiffs therefore failed to state a plausible entitlement to relief.  Mot. to Dismiss Pl.'s Am. Compl. (dkt. 32) at 4–6.  The Court agreed that the FAC was not plausible without some explanation of how the previously-alleged contract between Whitewater and CDM relates to the newly-alleged oral agreement between Whitewater and Plaintiffs, although the Court noted that it "will not hold Plaintiffs to a strict reading of their previous allegation that the letter to CDM 'confirmed the terms' of their agreement with Whitewater."  Order II at 6 & fn. 5.  The Court did not reach the other arguments raised by Whitewater in the Motion.  *Id.* at 7.  The Court granted Plaintiffs leave to amend but advised that failure to include sufficient allegations may lead the Court to conclude that further amendments would be futile.  *Id.*

### C. Second Amended Complaint and Present Motion

The Second Amended Complaint alleges that Royal Primo, with Lee as its representative, was the "exclusive agent" handling relationships with foreign vendors for the Kangwon Land water park project in South Korea.  SAC ¶¶ 7, 9.  The Plaintiffs now allege that CDM was one such foreign vendor that Royal Primo had arranged to be involved in the project and that Lee contacted Whitewater on CDM's recommendation.  *Id.* ¶¶ 9, 14.  According to Plaintiffs, after initially speaking with the then vice president of business development of Whitewater, Lee spoke

directly to Chutter and the parties agreed that Royal Primo would promote Whitewater to the Kangwon Land project in return for a 17% commission on any contract secured by Whitewater in the project. *Id.* ¶ 9. As in the original Complaint and the FAC, Plaintiffs allege that they expended significant effort on Whitewater's behalf, Whitewater obtained a lucrative contract as a result, and Whitewater has refused to pay Royal Primo the agreed commission. *Id.* ¶¶ 10, 13, 17–18. Plaintiffs further allege that Whitewater was aware of and actively encouraged Royal Primo's activities on Whitewater's behalf, that Whitewater orally confirmed the commission agreement during at least four conference calls between 2005 and 2009, and that various communications from Whitewater acknowledged its contractual obligations, including a January 2007 letter from Chutter to Lee which stated that Whitewater was "interested in the opportunity to provide the waterpark components for the Kangwon Land" project, a March 2008 letter from Whitewater to CDM acknowledging that there were "commissions and mark ups due to Don Lee," a February 2010 letter from Chutter to Lee confirming that Whitewater and Royal Primo had been working on the water park project "over the last couple of years," and an April 2010 letter from Chutter to Lee referring to Plaintiffs' as Whitewater's agent. *Id.* ¶¶ 11–12, 38.

Despite the oral agreement, according to Plaintiffs, Royal Primo "struggled to get Whitewater to put the terms of their arrangement into a formally executed contract." *Id.* ¶ 15. Plaintiffs allege that Lee communicated these difficulties to CDM, who had a working relationship with Whitewater and was aware of the agreement between Royal Primo and Whitewater, and that CDM contacted Whitewater on Royal Primo's behalf. *Id.* According to Plaintiffs, Whitewater subsequently delivered the Chutter Letter indicating Whitewater's desire to directly engage CDM as its agent in the water park project. *Id.* Plaintiffs allege that they had not consented to any assignment of their rights to CDM. *Id.* Plaintiffs further explain that they attached the Chutter Letter to the original Complaint in order to demonstrate that Whitewater was aware of Royal Primo's activities on its behalf and that Whitewater was willing to pay a 17% commission on its contracts for the water park project. *Id.* Plaintiffs also explain that CDM is not a necessary or indispensable party because they are not parties to the alleged oral contract between Royal Primo and Whitewater and that joining CDM is not feasible because it is no longer in existence. *Id.* ¶ 16,

4

1   Ex. 2.  There is no allegation as to whether CDM accepted Whitewater's proposal to pay CDM the

2   commission that Whitewater owed Plaintiffs.  The Second Amended Complaint seeks money

3   damages and includes claims for breach of contract, quasi-contract, fraud, and unfair business

4   practices.  *Id.* ¶¶ 14−37, A–F (prayer for relief).

5        On this Motion, Whitewater argues that: (1) Plaintiffs' breach of contract claim does not

6   state a plausible entitlement to relief, is precluded by the parol evidence rule, and is barred by the

7   applicable statute of limitations, Mot. to Dismiss 2nd Am. Compl. ("Mot.," dkt. 43) at 8, 11, 13[4];

8   (2) Plaintiffs' fraud claim is barred by the doctrine of election of remedies, is not pled with

9   particularity, and is barred by the applicable statute of limitations, *id.* at 14; (3) Plaintiffs' quasi-

10  contract claim is precluded by a valid express contract and is barred by the applicable statute of

11  limitations, *id.* at 17; (4) Plaintiffs failed to state a plausible claim for unfair business practices, *id.*

12  at 18; and (5) Plaintiffs failed to join a necessary party, *id.* at 19.

**III.   ANALYSIS**

   **A.   Legal Standard**

15       A complaint may be dismissed for failure to state a claim on which relief can be granted

16  under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  "The purpose of a motion to dismiss

17  under Rule 12(b)(6) is to test the legal sufficiency of the complaint."  *N. Star Int'l v. Ariz. Corp.*

18  *Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  Generally, a plaintiff's burden at the pleading stage

19  is relatively light.  Rule 8(a) of the Federal Rules of Civil Procedure states that "[a] pleading

20  which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim

21  showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).

22       In ruling on a motion to dismiss under Rule 12(b)(6), the court analyzes the complaint and

23  takes "all allegations of material fact as true and construe[s] them in the light most favorable to the

24  non-moving party."  *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

25  Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that

26  would support a valid theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

---

[4] In its Reply, Whitewater withdraws the argument that the breach of contract claim is time-barred. Reply at 4 n.1.

United States District Court
Northern District of California

1990).  A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).  Rather, the claim must be "'plausible on its face,'" meaning that the plaintiff must plead sufficient factual allegations to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

**B.      Whether Plaintiffs Failed to Join an Indispensable Party**

**1.   Legal Standard Under Rule 19**

In relevant part, Rule 19(a)(1) of the Federal Rules of Civil Procedure provides that a person must be joined as a party if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).  When it is not feasible to join a party that is required to be joined under Rule 19(a), the court

> must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include: (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

6

To determine whether a party is "indispensable" under Rule 19, there are "three successive inquiries." *E.E.O.C. v. Peabody W. Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005).  First, the court determines whether a nonparty is required to be joined under Rule 19(a); that is, whether a nonparty is "necessary."  *Id.*  If a nonparty is necessary, the court then determines whether joinder is feasible.  *Id.*  Joinder is not feasible "when venue is improper, when the absentee is not subject to personal jurisdiction, and when joinder would destroy subject matter jurisdiction."  *Id.*  Finally, if joinder of a necessary nonparty is not feasible, then the court must determine "whether in 'equity and good conscience' the case should be dismissed under Fed. R. Civ. P. 19(b)."  *Makah Indian Tribe v. Verity*, 910 F.2d 555, 559 (9th Cir. 1990).  "The inquiry is a practical one and fact specific and is designed to avoid the harsh results of rigid application."  *Id.* at 558 (citations omitted).  "The moving party has the burden of persuasion in arguing for dismissal."  *Id.*

### 2.  Parties' Arguments

In its Motion, Whitewater argues that CDM is a necessary party because "any determinations as to the validity, effect, or substance of Plaintiffs' alleged oral contract, [the Chutter Letter], or any related assignment, may impair or impede CDM's interests."  Mot. at 19. Whitewater further argues that Plaintiffs have no standing to sue for breach of contract because they are not parties to the contract underlying the Chutter Letter.  *Id.* at 20.  Alternatively, Whitewater contends that CDM is a necessary party because if the case proceeds without adjudicating CDM's rights, then Whitewater could face inconsistent obligations and risk of double recovery from Plaintiffs and from CDM.  *Id.*  In response to the SAC's allegation that joining CDM is not feasible because of CDM's forfeited business status in California, Whitewater argues that California law allows service of process upon a forfeited corporation.  *Id.*  Whitewater further contends that CDM was dissolved on August 20, 2013 in Delaware, its state of incorporation, and that Delaware law allows dissolved corporations to be sued for up to three years after dissolution. *Id.* at 20–21.

In their Opposition, Plaintiffs argue that CDM is not a necessary party either (1) under Rule 19(a)(1)(A) of the Federal Rules of Civil Procedure because Plaintiffs only allege a contract between Plaintiffs and Whitewater, and the Court can therefore accord complete relief among

existing parties, or (2) under Rule 19(a)(1)(B) because CDM is defunct so that "[p]ractically speaking, there will be nobody there in any case so concerns over its potential prejudice are lessened dramatically" and "the risk to Whitewater of incurring double, multiple, or otherwise inconsistent obligations is deminimus." Opp'n (dkt. 52) at 10–11. Plaintiffs further contend that even if CDM is a necessary party, joinder is not feasible because CDM was headquartered in California and shares domicile with Plaintiffs. *Id.* at 11. Thus, diversity jurisdiction would be destroyed if CDM was joined as a defendant in this action. *Id.* Plaintiffs no longer argue that joinder is not feasible due to CDM's status as a forfeited corporation. Finally, Plaintiffs assert that the action should proceed without CDM under Rule 19(b) because neither CDM nor the existing parties would be prejudiced by any judgment in this action and any potential prejudice could be lessened or avoided by shaping the relief. *Id.*

In its Reply, Whitewater argues that CDM, as a party to the contract underlying the Chutter Letter, is a "quintessential necessary party." Reply (dkt. 55) at 11 (citing cases). Further, Whitewater contends that even though CDM may be dissolved, CDM, its creditors, or former members may retain an interest, and thus, CDM or a successor in interest is a necessary party. *Id.* at 11–12. Whitewater also responds that if CDM is joined, it must be as a plaintiff because the "thrust of Plaintiffs' SAC" is to seek payment from Whitewater and "to the extent Whitewater owes monies, it would be to CDM for distribution to Plaintiffs." *Id.* at 12. Thus, joining CDM is feasible because CDM's joinder as plaintiff would not destroy diversity jurisdiction. *Id.* Finally, Whitewater contends that even if joinder is not feasible, this action must be dismissed because all four factors of a Rule 19(b) analysis favor dismissal. *Id.* at 12–13.

### 3. CDM is Not a Necessary Party

At the current pleading stage, there is no indication that CDM had entered into any contract with Whitewater because, on its face, the Chutter Letter does not evidence a contract between CDM and Whitewater and instead appears to be merely an offer.[5] Compl. Ex. A. Plaintiffs no

---

[5] During the course of discovery, of course, additional facts that bear on this determination may be found. The Court's ruling is without prejudice to future motions based on newly discovered evidence.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   longer allege that the Chutter Letter "confirmed" their contract with Whitewater[6] and Plaintiffs

2   otherwise do not allege a contractual relationship between CDM and Whitewater.  Without any

3   such contract alleged, CDM does not "claim[] an interest relating to the subject of the action,"

4   there is no risk of prejudice to CDM's rights, and Whitewater does not face any risk of multiple or

5   inconsistent obligations.  *See* Fed. R. Civ. P. 19(a)(1)(B).  CDM is therefore not a necessary party

6   under Rule 19(a)(1)(B).  Further, the SAC alleges that only Plaintiffs and Whitewater were parties

7   to the oral contract and Plaintiffs' claims for fraud, quasi contract and unfair business practices do

8   not involve CDM.  Thus, the Court can "accord complete relief among existing parties" in CDM's

9   absence and CDM is not a necessary party under Rule 19(a)(1)(A).  *See* Fed. R. Civ. P.

10  19(a)(1)(A).  Because CDM is not a necessary party, the Court does not reach the question of

11  whether joinder of CDM is feasible or whether CDM must be joined under Rule 19(b).

12          **C.      Breach of Contract**

13          Whitewater contends that the breach of contract claim fails to state a plausible entitlement

14  to relief.   For the reasons explained below, the Court finds that the breach of contract claim

15  plausibly states a right to relief and is not precluded by the parol evidence rule.

16          **1.   Whether Plaintiffs State a Plausible Claim for Breach of Contract**

17                  a.   Legal Standard Governing Amended Pleadings

18          The principle that a court may look to prior pleadings in determining the plausibility of an

19  amended complaint is well established.  *See, e.g.*, *Rodriguez v. Sony Computer Entm't Am., LLC*,

20  801 F.3d 1045, 1054 (9th Cir. 2015) ("Rodriguez's subsequent attempt to thwart the statutory

21  language by artfully pleading . . . is unconvincing, especially considering that the more recent

22  pleading completely contradicts the earlier pleading.").  Generally, an amended complaint should

23  contain "additional allegations that are 'consistent with the challenged pleading' and that do not

24  contradict the allegations in the original complaint."  *United States v. Corinthian Colls.*, 655 F.3d

25  984, 995 (9th Cir. 2011) (quoting *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296−97 (9th Cir.

26  _____

27  [6] The Court "will not hold Plaintiffs to a strict reading of their previous allegation that the letter to
    CDM 'confirmed the terms' of their agreement with Whitewater."  Order II at 6 n.5; *see PAE*

28  *Gov't Servs., Inc. v. M.P.R.I., Inc.*, 514 F.3d 856, 858−59 (9th Cir. 2007) (discussing
    considerations underlying the policy of permitting inconsistent pleading).

United States District Court
Northern District of California

1    1990)).  Ninth Circuit precedent is inconsistent as to whether amended pleadings may ever

2    contradict earlier allegations.  *Compare Airs Aromatics, LLC v. Opinion Victoria's Secret Stores*

3    *Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014) ("A party cannot amend pleadings to

4    directly contradict an earlier assertion made in the same proceeding." (citation, brackets, and

5    internal quotation marks omitted)) (holding that leave to amend would be futile), *with PAE Gov't*

6    *Servs., Inc. v. M.P.R.I., Inc.*, 514 F.3d 856, 860 (9th Cir. 2007) ("The short of it is that there is

7    nothing in the Federal Rules of Civil Procedure to prevent a party from filing successive pleadings

8    that make inconsistent or even contradictory allegations.") (holding that a district court erred in

9    striking inconsistent pleadings as sham litigation).  At the very least, however, "when evaluating

10   an amended complaint, '[t]he court may also consider the prior allegations as part of its "context-

11   specific" inquiry based on its judicial experience and common sense to assess whether' an

12   amended complaint 'plausibly suggests an entitlement to relief.'"  *McKenna v. WhisperText*, No.

13   5:14-CV-00424-PSG, 2015 WL 5264750, at *3 (N.D. Cal. Sept. 9, 2015) (quoting *Cole v.*

14   *Sunnyvale*, No. C-08-05017-RMW, 2010 WL 532428, at *4 (N.D. Cal. Feb. 9, 2010)) (alteration

15   in original).

16                    b.   Parties' Arguments

17           Whitewater argues that allegations of the SAC continue to conflict with previous

18   allegations as well as the Chutter Letter attached to the original Complaint.  Mot. at 8.  Whitewater

19   contends that Plaintiffs allege that Whitewater had two agreements, one with CDM and one with

20   Plaintiffs, and that such allegations contradict the language of the Chutter Letter which suggests

21   that Whitewater entered into only the agreement with CDM.  *Id.* at 9.  Whitewater further

22   contends that it is "completely implausible" that Whitewater agreed to pay the same commission

23   twice to CDM and to Plaintiffs for the same promotional activities.  *Id.* at 10.  Whitewater argues

24   that Plaintiffs' characterization of the Chutter Letter as an assignment of Plaintiffs' rights to CDM

25   is also implausible, because the Chutter Letter indicates an agreement between Whitewater and

26   CDM rather than an assignment.  *Id.*  Finally, Whitewater contends that if the Chutter Letter was

27   an assignment which Plaintiffs did not agree to, it is implausible that Plaintiffs would stay silent

28   for six and a half years as if the original oral agreement was still in effect and then file suit.  *Id.* at

11.

In their Opposition, Plaintiffs largely repeat their allegations regarding CDM and the Chutter Letter and further explain that Plaintiffs never considered the Chutter Letter to embody their original oral agreement with Whitewater.  Opp'n at 4–5.  Plaintiffs also argue that Whitewater has fair notice of Plaintiffs' claims and the grounds upon which they rest.  *Id.* at 5–6. In its Reply, Whitewater reiterates its arguments from the Motion.  Reply at 2–4.

              c.   Plaintiffs Sufficiently Explain CDM's Involvement and Plausibly State a Claim for Breach of Contract

Whether Plaintiffs' allegations remain implausible turns primarily on whether the SAC, which alleges an oral agreement between Whitewater and Plaintiffs, conflicts with the allegations of the original Complaint, which alleged that the Chutter Letter "confirmed" the business relationship between Plaintiffs, Whitewater, and CDM.

Although Whitewater attempts to characterize Plaintiffs' SAC as alleging the existence of two valid contracts, the SAC alleges only the oral contract between Whitewater and Royal Primo without alleging any contract between Whitewater and CDM.  SAC ¶¶ 9, 15, 20.  Plaintiffs additionally allege that Royal Primo "struggled to get Whitewater to put the terms of their arrangement into a formally executed written contract" and that Whitewater, without input from Plaintiffs, delivered the Chutter Letter to CDM seeking to directly engage CDM as its agent.  *Id.* ¶ 15.  As explained above, the Chutter Letter is, on its face, merely an offer from Whitewater rather than a formal written contract between Whitewater and CDM.  Compl. Ex. A.  Plaintiffs no longer allege that the letter "confirmed" the commission contract and there is no indication in the SAC or in the Chutter Letter that CDM agreed to the arrangement described in the letter.  SAC ¶ 15; Compl. Ex. A.  Based on the allegations of the SAC, the Court cannot infer that any contract exists between Whitewater and CDM or that Whitewater agreed to pay for the same work twice. That Plaintiffs waited six and a half years after the Chutter Letter to file suit does not make the SAC any less plausible, as there are any number of practical reasons why Plaintiffs might have waited to file suit.

The SAC sufficiently explains the relationship between the previously-alleged contract

United States District Court
Northern District of California

1    between Whitewater and CDM and the newly-alleged oral contract between Whitewater and

2    Royal Primo.  The Court finds that Plaintiffs state a plausible claim for breach of contract.

3        **2.   The Chutter Letter Does Not Preclude Plaintiffs' Breach of Contract Claim**

4        Whitewater also argues that the Chutter Letter is an integrated written agreement.  Mot. at

5    11–13 (analyzing factors listed in *Lennar Mare Island, LLC v. Steadfast Ins. Co.*, __ F. Supp. 3d

6    __, 2016 WL 1267786, at *9 (E.D. Cal. Mar. 31, 2016)).  Thus, according to Whitewater, the parol

7    evidence rule applies and the Chutter Letter supersedes the oral agreement alleged by Plaintiffs.

8    *Id.*  As explained above, however, the Chutter Letter is not, on its face, a written contract and it is

9    certainly not an integrated written contract.  Therefore, the parol evidence rule does not apply to

10   the Chutter Letter and Plaintiffs' alleged oral agreement is not superseded.

11       **D.    Fraud**

12       Whitewater argues that Plaintiffs' fraud claim is barred by the election of remedies

13   doctrine, is not pled with particularity, and is barred by the applicable statute of limitations.  As

14   discussed below, although the claim is not barred at this stage by the election of remedies doctrine

15   and Plaintiffs have otherwise included sufficient factual allegations, the fraud claim is dismissed

16   with leave to amend based on the statute of limitations.

17       **1.   The Election of Remedies Doctrine Does Not Preclude Plaintiffs' Fraud
           Claim**

18

19       In *Baker v. Superior Court*, the California Court of Appeal explained the election of

20   remedies doctrine and its rationale:

21              Broadly speaking, election of remedies is the act of choosing
              between two or more concurrent but inconsistent remedies based
22            upon the same set of facts. Ordinarily, a plaintiff need not elect, and
              cannot be compelled to elect, between inconsistent remedies during
23            the course of trial prior to judgment. The doctrine of election of
              remedies is but a specific application of the doctrine of equitable
24            estoppel. The doctrine rests on the rationale that when plaintiff has
              pursued a remedy which is inconsistent with an alternative remedy
25            and thereby causes the defendant substantial prejudice, plaintiff
              should be estopped from pursuing the alternative remedy.

26   150 Cal. App. 3d 140, 144–45 (1983) (citations and internal quotations omitted).  The Ninth

27   Circuit clarified that "only if the plaintiffs' actions cause substantial prejudice to the defendant are

28   the plaintiffs required to make a binding election of remedies prior to judgment."  *Sharpe v.*

United States District Court
Northern District of California

1   *F.D.I.C.*, 126 F.3d 1147, 1153 (9th Cir. 1997).  The doctrine of election of remedies "applies only

2   when the plaintiff seeks inconsistent remedies in causes of action based on the same set of facts."

3   *Gen. Ins. Co. v. Mammoth Vista Owners' Ass'n*, 174 Cal. App. 3d 810, 828 (1985).

4          It is well establishedthat a complaint may plead inconsistent legal theories.  *See, e.g.*, *PAE*,

5   514 F.3d at 859 ("[W]e allow pleadings in the alternative—even if the alternatives are mutually

6   exclusive.").  Further, as explained by the California Court of Appeal as well as the Ninth Circuit,

7   a plaintiff cannot be compelled to elect a remedy prior to judgment in the absence of substantial

8   prejudice to defendant.  *See Baker*, 150 Cal. App. 3d at 145; *Sharpe*, 126 F.3d at 1153.  The

9   requirement that the two causes of action sought by plaintiff be based on the same set of facts is

10  merely a necessary condition for application of election of remedies, not a sufficient one.  Here,

11  Whitewater does not argue that it will be subject to substantial prejudice as a result of Plaintiffs

12  pursuing both the fraud and breach of contract claims, and the Court finds no such substantial

13  prejudice in this early stage of litigation.  *See Ram's Gate Winery, LLC v. Roche*, 235 Cal. App.

14  4th 1071, 1087 (2015) (declining to apply the election of remedies doctrine at the summary

15  judgment stage to plaintiff's inconsistent promissory fraud and breach of contract claims).  The

16  election of remedies doctrine therefore does not bar Plaintiffs' fraud claims.[7]

### 2.  Plaintiffs State a Fraud Claim with Particularity

#### a.  Legal Standard under Rule 9(b)

19          Rule 9(b) of the Federal Rules of Civil Procedure sets a heightened pleading standard for

20  claims based on fraud.  "In alleging fraud or mistake, a party must state with particularity the

21  circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  "Rule 9(b) serves to give

22  defendants adequate notice to allow them to defend against the charge and to deter the filing of

23  complaints 'as a pretext for the discovery of unknown wrongs,' to protect professionals from the

24  harm that comes from being subject to fraud charges, and to 'prohibit [ ] plaintiff[s] from

---

[7] Whitewater points to *Lifeline Food Co. v. Gilman Cheese Corp.*, where Judge Grewal applied the election of remedies doctrine and dismissed a promissory fraud claim based on the same set of facts as a breach of contract claim, without addressing the issue of prejudice.  *See* No. 5:15–cv– 00034–PSG, 2015 WL 2357246, at *5 (N.D. Cal. May 15, 2015).  To the extent that the Court's decision here conflicts with Judge Grewal's decision in *Lifeline*, the Court respectfully disagrees with that application of the doctrine.

United States District Court
Northern District of California

1    unilaterally imposing upon the court, the parties and society enormous social and economic costs

2    absent some factual basis.'" *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996)

3    (alterations in original).  The Ninth Circuit has held that in order to meet this heightened standard,

4    "a pleading must identify 'the who, what, when, where, and how of the misconduct charged,' as

5    well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is

6    false.'" *United States ex rel. Cafasso, v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th

7    Cir. 2011) (alterations in original).  The heightened standard does not apply to "[m]alice, intent,

8    knowledge, and other conditions of a person's mind." Fed. R. Civ. P. 9(b).  Where the alleged

9    fraud occurred over a long period of time, "Rule 9(b)'s particularity requirement is less stringently

10   applied." *United States v. Hempfling*, 431 F. Supp. 2d 1069, 1076 (E.D. Cal. 2006); *see also*

11   *Hargrove & Constanzo v. C.I.R.*, 240 F.R.D. 652, 658 (E.D. Cal. 2006).

                          b.  Parties' Arguments

13            Whitewater contends that Plaintiffs' fraud claim fails to meet the heightened pleading

14   requirements of Rule 9(b) of the Federal Rules of Civil Procedure.  Mot. at 15–17.  Whitewater

15   first argues that to the extent that the fraud claim is based on Whitewater's alleged false promises

16   between 2005 and 2009, the four year time period is insufficient to plead the time of fraud with

17   specificity.  *Id.* at 16 (citing district court decisions from Connecticut and New York).  Second, to

18   the extent that the fraud claim is based on a letter delivered by Chutter to Lee in January 2007

19   which stated that Whitewater was interested in the water park project, Whitewater argues that

20   Plaintiffs fail to explain how the statement was false and that, to the contrary, the statement

21   appears to have been true.  *Id.* at 16–17.  Third, to the extent that the fraud claim is based on

22   Whitewater's letter to CDM delivered in March 2008 stating that there were "commissions and

23   markups due to Don Lee," Whitewater argues that Plaintiffs fail to allege when they learned of the

24   statement, their reliance on the statement, and Whitewater's intent to induce reliance on the

25   statement.  *Id.* at 17.  Finally, to the extent that the fraud claim is based on Whitewater's

26   statements in 2010, Whitewater argues that Plaintiffs fail to allege that the statements were false

27   and that there was no detrimental reliance because Plaintiffs do not allege any work done on

28   behalf of Whitewater after 2009.  *Id.*

United States District Court
Northern District of California

14

1    In their Opposition, Plaintiffs argue that allegations of false promises to pay commissions

2    are sufficient in pleading fraud.  Opp'n at 8 (citing *Douglas v. Super. Ct.*, 215 Cal. App. 3d 155,

3    158 (1989)).  Otherwise, Plaintiffs only respond with blanket assertions that they have pled the

4    elements of fraud with particularity.  *Id.*  Plaintiffs no longer argue the fraud claim on the basis of

5    statements by Whitewater in 2010, instead focusing on the four conference calls between 2005 and

6    2009, the January 2007 letter, and the March 2008 letter.  *Id.*  In its Reply, Whitewater argues that

7    *Douglas*, cited by Plaintiffs in their Opposition, does not apply to Plaintiffs claims because that

8    case involved no issues of election of remedies.  Reply at 8.

9                    c.   Plaintiffs Plead Fraud with Sufficient Particularity

10   Plaintiffs' fraud claim is primarily based on the alleged false promises made by

11   Whitewater during at least four conference calls during the 2005 to 2009 time period, in which

12   Chutter promised to pay Royal Primo a 17% commission on contracts for the Kangwon Land

13   project.  SAC ¶¶ 37–38.  Whitewater points to two cases in support of its argument that this four

14   year time period fails to meet the specificity requirement of Rule 9(b).  Mot. at 16.

15   In *Tatum v. Oberg*, the District of Connecticut held that the plaintiff failed to meet the

16   particularity requirement of Rule 9(b) where the plaintiff generally alleged that the defendants

17   made numerous false statements during a forty-one month period when the defendants represented

18   the plaintiff in a legal action.  650 F. Supp. 2d 185, 188–89, 191 (D. Conn. 2009).  The court also

19   noted that the complaint failed to specify the place of the allegedly fraudulent statements and

20   specifically held that a "span of approximately forty-one months is clearly insufficient." *Id.*  In

21   *Alnwick v. European Micro Holdings, Inc.*, the Eastern District of New York similarly held that

22   the plaintiffs' allegation that the defendants fraudulently transferred assets "on or about 2001" in

23   order to render a defendant judgment-proof was vague and insufficient to meet the standards of

24   Rule 9(b).  281 F. Supp. 2d 629, 646 (E.D.N.Y. 2003).  The court also noted that the complaint did

25   not identify the assets which were allegedly transferred.  *Id.*

26   In contrast, the Eastern District of California has held that Rule 9(b) was satisfied where a

27   complaint generally alleged that fraudulent sale of memberships and services occurred at tax

28   related seminars during a two year period and pointed to two such seminars, specified by month,

15

1    year, and city, as well as a rally at which additional fraud occurred, specified by city and a two day

2    period. *Hempfling*, 431 F. Supp. 2d at 1076.  The court noted that Rule 9(b) is "less stringently

3    applied" to claims of fraud over a period of time and held that "these allegations [gave]

4    [d]efendant adequate notice of the 'specific fraudulent conduct' of which he is accused and

5    enable[d] him to 'adequately defend against such allegations.'"  *Id.* (quoting *In re Stac Elecs. Sec.*

6    *Litig.*, 89 F.3d at 1405).

7         Here, Plaintiffs allege that between 2005 and 2009, Chutter made false promises during at

8    least four conference calls between Plaintiffs and Chutter.  SAC ¶¶ 37–38.  These allegations

9    specifically identify the "who, what, where, and how" and generally identify the "when."  *Tatum*

10   involved an attorney-client relationship, presumably with numerous communications between the

11   plaintiff and the defendant, and the plaintiffs of that case failed to provide any indication of which

12   communications were relevant.  *See Tatum*, 650 F. Supp. 2d at 188–89, 191.  Similarly in *Alnwick*,

13   the plaintiffs failed to allege any specific fraudulent act, but instead merely alleged the general

14   nature of the supposed fraudulent activity along with a vague time period.  *See Alnwick*, 281 F.

15   Supp. 2d at 646.  Here, in contrast, although Plaintiffs do not allege specific dates, the allegations

16   specifically pinpoint the relatively few conversations, namely the conference calls, in which the

17   alleged false promises were made.  While the Court acknowledges that Plaintiffs' allegation of

18   "when" is not as specific as in *Hempfling*, the Court finds that the SAC gives Whitewater

19   "adequate notice to allow them to defend against the charge" and that Plaintiffs' fraud claim is not

20   a "pretext for the discovery of unknown wrongs."  *See In re Stac Elecs. Sec. Litig.*, 89 F.3d at

21   1405.  Plaintiffs' fraud claim meets the particularity requirement of Rule 9(b).

22        Whitewater additionally argues that the January 2007 statement by Chutter acknowledging

23   Whitewater's interest in the water park project is not false and cannot support a fraud claim.  Mot.

24   at 16–17.  Plaintiffs allege, however, that the statement encouraged them to continue work on

25   behalf of Whitewater and implicitly allege that the statement was misleading.  SAC ¶ 38 (alleging

26   that the letter "encourag[ed] Lee to keep pushing for Whitewater's inclusion.").  This is sufficient.

27   *See Cafasso*, 637 F.3d at 1055 ("[A] pleading must identify . . . 'what is false or misleading about

28   [the purportedly fraudulent] statement . . . .'" (citation omitted, third alteration in original)).

United States District Court
Northern District of California

Because Plaintiffs' allegations discussed above state a fraud claim with sufficient particularity, the Court does not reach Whitewater's arguments regarding allegations of fraud based on letters from March 2008, February 2010, and April 2010.

### 3. Plaintiffs Must Plead Additional Facts to Show That the Fraud Claim is Not Barred by the Statute of Limitations

"A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint.'" *Stanford Hosp. & Clinics v. Guarantee Trust Life Ins. Co.*, No. 5:11–cv–01271 EJD, 2012 WL 694743, at *3 (N.D. Cal. Mar. 1, 2012) (quoting *Von Saher v. Norton Simon Museum of Art*, 592 F.3d 954, 969 (9th Cir. 2010)).

Whitewater argues that under California law, the statute of limitations period for fraud claims is three years. Mot. at 14. Whitewater contends that the complaint must affirmatively excuse failure to discover fraud if a plaintiff brings a fraud action more than three years after the commission of fraud. *Id.* at 14 (citing cases). Whitewater argues that here, Plaintiffs filed their action in 2015, more than three years after Whitewater allegedly committed fraud between 2005 and 2009. *Id.* at 15. Whitewater further contends that the SAC does not affirmatively excuse Plaintiffs' failure to discover fraud and that Plaintiffs cannot excuse their failure because Plaintiffs were put on "notice of fraud" in 2009 by the Chutter Letter, a formally executed agreement. *Id.*

In their Opposition, Plaintiffs respond that they did not have sufficient notice of fraud until Whitewater refused the payment of commission. Opp'n at 8. Plaintiffs do not respond to the argument that the SAC did not affirmatively excuse failure to discover fraud. In its Reply, Whitewater contends that Plaintiffs had a duty to inquire into the possibility of fraud when they learned of the Chutter Letter, which conflicted with the alleged oral contract. Reply at 7.

The statute of limitations period for fraud claims is three years. Cal. Code Civ. Proc. § 338(d). "The statute commences to run only after one has knowledge of facts sufficient to make a reasonably prudent person suspicious of fraud, thus putting him on inquiry." *Hobart v. Hobart Estate Co.*, 26 Cal. 2d 412, 437 (1945). This discovery rule "operates as an exception to the statute of limitations [so that] 'if an action is brought more than three years after commission of

17

the fraud, plaintiff has the burden of pleading and proving that he did not make the discovery until within three years prior to the filing of his complaint.'" *Square 1 Bank v. Lo*, No. 12–cv–05595– JSC, 2014 WL 4181907, at *6 (N.D. Cal. Aug. 22, 2014) (citing *Hobart*, 26 Cal. 2d at 437). "To that end, a plaintiff must allege facts showing 'the time and surrounding circumstances of the discovery and what the discovery was.' 'The discovery related facts should be pleaded in detail to allow the court to determine whether the fraud should have been discovered sooner.'" *Id.* (quoting *Cansino v. Bank of Am.*, 224 Cal. App. 4th 1462, 1472 (2014)) (citations omitted); *see also Hopkins v. Dow Corning Corp.*, 33 F.3d 1116, 1120 (9th Cir. 1994) ("To invoke the discovery rule, plaintiff must plead facts which show '(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence.'" (quoting *Saliter v. Pierce Bros. Mortuaries*, 81 Cal. App. 3d 292, 296 (1978))).

Here, the action was brought in 2015, more than three years after the alleged commission of fraud between 2005 and 2010. Further, Plaintiffs fail to plead any facts regarding the "time and surrounding circumstances" of their discovery of fraud. *See* SAC ¶¶ 36–43; *Square 1 Bank*, 2014 WL 4181907, at *6. Plaintiffs therefore have not met their burden to invoke the discovery rule, and the fraud claim as it stands is barred by the statute of limitations. *See Square 1 Bank*, 2014 WL 4181907, at *6.

Whitewater also argues that Plaintiffs cannot plead additional facts to avoid application of the statute of limitations because the Chutter Letter was sufficient to put Plaintiffs on notice of possible fraud, presumably seeking to dismiss the fraud claim without leave to amend. Mot. at 15. The SAC, however, does not indicate when and how Plaintiffs discovered the Chutter Letter or its contents—it may be the case that they learned of the letter within three years prior to filing their Complaint. SAC ¶ 15. Further, because the Chutter Letter is not a contract on its face, the Court cannot conclusively determine at the pleading stage whether it was sufficient to give Plaintiffs notice of possible fraud. *See* Compl. Ex. A. Plaintiffs' fraud claim is therefore dismissed with leave to amend. *See Von Saher*, 592 F.3d at 969 (holding that dismissal without leave to amend was not appropriate when it was not clear that the complaint could not be amended to show lack of reasonable notice).

United States District Court
Northern District of California

### E.   Quasi-Contract

#### 1.   The Chutter Letter Does Not Preclude Plaintiffs' Quasi-Contract Claim

Whitewater first argues that Plaintiffs' quasi-contract claim is precluded by the Chutter Letter, which is a valid express contract covering the same subject matter.  Mot. at 17–18 (citing *Neal v. Select Portfolio Servicing, Inc.*, No. 5:15-CV-03212-EJD, 2016 WL 48124, at *6 (N.D. Cal. Jan. 5, 2016)).  As explained above, however, the Chutter Letter is not alleged to be, nor is clearly on its face, a valid express contract and its existence does not preclude the quasi-contract claim.

#### 2.   Plaintiffs Must Plead Additional Facts to Show That the Quasi-Contract Claim is Not Barred by the Statute of Limitations

Whitewater contends that the statute of limitations period for quasi-contract claims is two years and that the limitations period begins to run at the date of the last service performed.  Mot at 18 (citing cases).  Whitewater argues that here, Plaintiffs alleged that they performed work on behalf of Whitewater until 2009, and therefore, Plaintiffs' quasi-contract claims must have been brought by 2011.  *Id.*

In their Opposition, Plaintiffs contend that under the discovery rule, the statute of limitations does not "accrue until the aggrieved party has notice of the facts constituting the injury."  Opp'n at 9 (citing *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 806 (2005)).  Plaintiffs argue that here, they did not have notice that they would not be paid for their work until Whitewater allegedly received its first contract payments from the water park project in 2016 and refused to pay Plaintiffs.  *Id.*  Plaintiffs further contend that "these type [sic] of statute of limitations issues 'is normally a question of fact'" and should not be decided on a motion to dismiss.  *Id.* at 9–10 (citing *Fox*, 35 Cal. 4th at 810).

In its Reply, Whitewater responds that if a complaint, on its face, would be barred by the statute of limitations without application of the discovery rule, then a plaintiff must plead time and manner of discovery as well as inability to have made timely discovery despite reasonable diligence.  Reply at 9–10 (citing cases).  Whitewater argues that here, the SAC does not include the allegations sufficient for application of the discovery rule.  *Id.* at 10.

United States District Court
Northern District of California

The statute of limitations for quasi-contract claims is two years.  Cal. Code Civ. Proc. § 338.  "[T]he limitations period begins to run from the time the last service is rendered by the plaintiff to the defendant."  *Stanford Hosp.*, 2012 WL 694743, at *3 (citing *Johnstone v. E & J Mfg. Co.*, 45 Cal. App. 2d 586, 588 (1941)).  As discussed above in the context of Plaintiffs' fraud claim, California's discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action," *Fox*, 35 Cal. 4th at 807, but "[t]o invoke the discovery rule, plaintiff must plead facts which show '(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence,'" *Hopkins*, 33 F.3d at 1120 (quoting *Saliter*, 81 Cal. App. 3d at 296).

Here, Plaintiffs allege that they performed services for Whitewater until 2009, more than two years prior to the filing of this action.  SAC ¶ 10.  Further, Plaintiffs fail to plead the "time and manner of discovery" or "the inability to have made earlier discovery despite reasonable diligence."  *See Hopkins*, 33 F.3d at 1120.  As with the fraud claim, this is insufficient for the application of the discovery rule and the quasi-contract claim as it stands is barred by the statute of limitations.  Plaintiffs' quasi-contract claim is therefore dismissed with leave to amend.

**F.   Unfair Business Practices Claim**

Whitewater argues that the unfair business practices claim must be dismissed for failure to state a plausible claim because Plaintiffs "do not specify the theories under which they are pursuing this claim, or the facts supporting their claim."  Mot. at 19.  Whitewater also contends that to the extent that Plaintiffs claim unlawful business practices, they fail to assert a predicate violation of any other law because the breach of contract, fraud, and quasi-contract claims must be dismissed.  *Id.*  In their Opposition, Plaintiffs merely argue that they sufficiently alleged breach of contract, fraud, and quasi-contract claims and, therefore, the claim for "unfair business practices predicated on that conduct is also sufficiently pled."  Opp'n at 14.  Plaintiffs fail to discuss whether they state a plausible claim.  *Id.*

A complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  Here, in regard to the unfair business practices claim, the SAC merely incorporates its general allegations and states the

conclusion that Whitewater engaged in "unlawful, unfair, and/or fraudulent business acts and practices in violation of Business and Professions Code sections 17200 *et seq.*"  SAC ¶¶ 44–45. This claim consists of the mere legal conclusion that there was a violation, not even rising to the level of "a formulaic recitation of the elements."  *See id.*; *Twombly*, 550 U.S. at 555.  Plaintiffs must provide additional allegations and details; the unfair business practices claim is dismissed with leave to amend.

## IV.      CONCLUSION

For the reasons stated above, Whitewater's Motion to Dismiss is GRANTED IN PART. Plaintiffs' fraud claim, quasi-contract claim, and unfair business practices claim are DISMISSED with leave to amend.  If Plaintiffs wish to further amend to pursue these claims, they may do so no later than August 12, 2016.

**IT IS SO ORDERED.**

Dated: July 29, 2016

_____

JOSEPH C. SPERO
Chief Magistrate Judge